UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARLA GWENNETTA ELLIOTT,

    Plaintiff,

v.                                                                               CASE NO. 3:14-cv-119-J-32JBT

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income, alleging disability beginning on April 28, 2012. (Tr. 205–217.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on May 28, 2013, at which Plaintiff was represented by an attorney. (Tr. 23–54.) The ALJ found that Plaintiff was not disabled from April 28, 2012, through June 19, 2013, the date of the ALJ's decision. (Tr. 58–70.)

In reaching his decision, the ALJ found that Plaintiff had the severe

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

impairments of "obesity, disorders of the spine, arthritis, seizure disorder, affective disorder, and anxiety disorder." (Tr. 60.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform:

> less than light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is capable of: occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday. She requires the option to sit or stand. The claimant should avoid ladders and unprotected heights. She should avoid the proximity to heavy, moving machinery. She is limited to occasionally bending, stooping, kneeling, and crouching. The claimant should avoid squatting or crawling. She should avoid the operation of foot controls. The claimant requires a low stress work environment with no production lines and simple tasks. She should have limited contact with the public.

(Tr. 62–63.)

Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated in the attached transcript of the pronouncement of recommendation on August 13, 2014, which is incorporated herein by reference, and as elaborated on herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I.     Standard of Review

As the Eleventh Circuit has stated:

> We review the ALJ's decision to determine if it is supported by substantial evidence and based on proper

> legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderates against the ALJ's findings, we must affirm if the decision reached is supported by substantial evidence. In conducting this review, we may not reweigh the evidence or substitute our judgment for that of the ALJ. With respect to the ALJ's legal conclusions, however, our review is *de novo*.

*Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (per curiam) (citations and quotations omitted).

## II. Discussion

### A. The ALJ applied the correct legal standards in weighing the evidence.

Plaintiff argues that the ALJ did not apply the correct legal standards because he did not state what weight he gave to all of the medical opinions. (Doc. 14 at 9.) In *Winschel v. Comm'r of Soc. Sec.*, the Eleventh Circuit stated:

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion. In such a situation, to say that the ALJ's decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

631 F.3d 1176, 1179 (11th Cir. 2011) (citations and quotations omitted). Plaintiff

argues that the ALJ did not state what weight he gave to the opinions of a non-examining psychologist, Dr. Michelle Butler (Doc. 14 at 9–12), or certain mental evaluations of Plaintiff from 2012 (*id.* at 12–15).  The undersigned disagrees and recommends that the ALJ's decision complies with *Winschel*.  Furthermore, if there is any error, it should be considered harmless.

### 1. Dr. Butler's Opinions

As discussed in the attached transcript, the ALJ adequately addressed the doctors' opinions and gave explicit and adequate reasons to the extent any such opinions, including Dr. Butler's, were discounted.  In arguing that the ALJ did not give proper weight to Dr. Butler's opinions, Plaintiff specifically emphasizes that Dr. Butler concluded that Plaintiff had "[l]imited ability to sustain CPP [concentration, persistence, and pace] for extended period but should be able to complete simple tasks for 6-8 hours in an eight-hour period at an appropriate pace, and sustain this level across days and weeks." (Tr. 114; *see* Doc. 14 at 9–12.)  Plaintiff argues that the ALJ can render a decision of not disabled only when a claimant has the ability to do full-time work, meaning eight hours a day for five days a week. (Doc. 14 at 10.)

The ALJ collectively discussed the opinions of three mental health doctors, Drs. Jennifer Meyer, Michelle Butler, and Allison Keiter, and gave "great weight" to their "overall conclusions" that Plaintiff was not mentally precluded from performing all work activity. (Tr. 68.)  The ALJ noted that these opinions were consistent with the overall evidence, including Plaintiff's minimal mental deficits at the consultative

examination, Plaintiff's testimony regarding her activities of daily living, Plaintiff's conservative treatment following her hospitalization under the Baker Act, and the lack of any exacerbation of Plaintiff's mental health symptoms since her hospitalization. (Tr. 68.) The ALJ also noted that although Plaintiff alleged memory loss, there was no indication in the record that she reported this symptom to her treating physicians. (*Id.*)

The ALJ also discussed Plaintiff's mental situation extensively elsewhere in his decision. (*See* Tr. 66–68.) He discussed in detail the consultative evaluation with Dr. Keiter and the mental status examination performed by a neurologist, Dr. Fatima Milfred. (Tr. 67, 340–44, 576.) The ALJ also noted that Dr. Meyer, a state agency doctor, found that Plaintiff did not have any severe mental impairments. (Tr. 67, 94.)

Thus, to the extent the ALJ may have discounted some of Dr. Butler's opinions, he gave explicit and adequate reasons supported by substantial evidence for doing so. Moreover, Dr. Butler ultimately concluded that Plaintiff was not disabled. (Tr. 132.) Further, Dr. Butler's opinion that Plaintiff could complete tasks for six to eight hours a day was somewhat ambiguous, leaving room for interpretation by the ALJ. It is also noteworthy that the ALJ imposed significant mental limitations in the RFC, as he found Plaintiff required a low stress work environment with no production lines and simple tasks, and limited contact with the public. (Tr. 63.) Finally, to the extent the ALJ did not strictly comply with *Winschel*,

any such error is harmless because the ALJ's decision is adequate to ensure meaningful review. Thus, the undersigned recommends affirmance on this issue.

### 2.     Mental Evaluations from 2012

Plaintiff argues further that the ALJ did not state what weight he gave certain mental evaluations of Plaintiff from 2012. (Doc. 14 at 14.) As discussed in the attached transcript, the ALJ adequately addressed the mental evaluations of Plaintiff. The ALJ discussed Plaintiff's hospitalization from May 2, 2012 to May 7, 2012 under the Baker Act and noted that upon discharge, Plaintiff had a Global Assessment of Functioning ("GAF") score of 60. (Tr. 66, 588.) A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. (Tr. 67.) At the time of Dr. Keiter's evaluation on July 31, 2012, Plaintiff's GAF score was 68, which indicates some mild symptoms or some difficulty in social, occupational, or school functioning. (Tr. 67, 343.)

In her brief, Plaintiff emphasizes the diagnosed disorders and the low GAF scores assessed during Plaintiff's hospitalization. (Doc. 14 at 12–13; Tr. 315, 319, 417.) However, a diagnosis does not prove disability. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (stating that "a diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on her ability to work" (internal quotation marks and citation omitted)). Moreover, "a GAF score does not itself necessarily reveal a particular type of

limitation and is not an assessment of a claimant's ability to work." *Ward v. Astrue*, Case No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) (internal quotations omitted).

Furthermore, it was reasonable for the ALJ to ultimately focus not on Plaintiff's brief period of hospitalization for six days during a crisis, but on her overall functioning and how she responded after hospitalization. As noted above, since her hospitalization, Plaintiff had been treated conservatively and had not experienced any exacerbation of her mental health symptoms. (Tr. 68.) The ALJ adequately addressed the mental evaluations during Plaintiff's period of hospitalization in the context of Plaintiff's overall mental health picture. The undersigned recommends that the ALJ did not err. Moreover, at any rate, any failure to comply strictly with *Winschel* should be considered harmless error because the ALJ's decision is clear enough to ensure meaningful review.

> **B.    The ALJ applied the correct legal standards in determining Plaintiff's RFC.**

Finally, Plaintiff argues that the ALJ erred in not including all of her "seizure limitations" in her RFC. (Doc. 14 at 15–18.) As explained in the attached transcript, the undersigned recommends that this argument be rejected.

At step two, the ALJ found that Plaintiff had several severe impairments, including "seizure disorder." (Tr. 60.) "Step two [of the ALJ's sequential evaluation process] is a threshold inquiry that allows only claims based on the most trivial

impairments to be rejected." *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (quotations omitted). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* (quotations omitted).

Severe impairments do not necessarily result in specific functional limitations. *See, e.g.*, *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) ("The ALJ determined that Castel's obesity was a severe impairment. However, the ALJ's decision reflects that Castel's obesity was ultimately determined not to result in any specific functional limitations."); *Davis-Grimplin v. Comm'r, Soc. Sec. Admin.*, 556 F. App'x 858, 863 (11th Cir. 2014) ("The ALJ had ample evidence on which to conclude that Davis did not have functional limitations of her hands notwithstanding that her bilateral carpal tunnel syndrome is a severe impairment."); *see also Knuckles-Kopcsik v. Colvin*, Case No. 8:13-cv-1288-T-23JBT, Doc. 32 at 3 (M.D. Fla. Mar. 17, 2014) (USMJ Report and Recommendation, adopted at Doc. 34). Thus, if no specific functional limitations from a severe impairment exist, the ALJ need not include a corresponding limitation for that impairment in the RFC.

In this case, the ALJ did in fact include a specific functional limitation in the RFC as a result of Plaintiff's seizures. The ALJ found that Plaintiff should avoid proximity to heavy, moving machinery. (Tr. 62, 66.) Plaintiff argues that the ALJ did not include "limitations like having a seizure for five to six minutes, blacking out,

8

vomiting, staring blankly, being unresponsive, and being dizzy." (Tr. 14 at 18.) However, substantial evidence supports the ALJ not including these transitory purported symptoms in the RFC.  For example, the ALJ noted that Plaintiff "consistently indicated that these [seizure] episodes occur only at night." (Tr. 66.) The ALJ also noted that there was a significant decrease in the frequency of these nightly seizures from November/December 2012 through March/April 2013 (Tr. 64, 599–603), and that Plaintiff was responding well to treatment for her seizures. (Tr. 66.)  Thus, the undersigned recommends that the ALJ's findings are supported by substantial evidence and the ALJ applied the correct legal standards in determining Plaintiff's RFC.

### III.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the ALJ's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.

2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and

close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on November 18, 2014.

                                              *Joel B. Toomey*
                                              JOEL B. TOOMEY
                                              United States Magistrate Judge

Attachment:

Transcript of the August 13, 2014
Pronouncement of Recommendation

Copies (w/ attachment) to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record